[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, SMS Financial II, L.L.C., the holder of a promissory note signed by the defendant, Tewfik A. Kodsy, seeks a prejudgment remedy consisting of an attachment of realty located at 958 Lake Avenue, Greenwich, the title to which is presently in the name of Kodsy's wife, Marie-Theresa Chouchani Kodsy, also a defendant in this action. Kodsy and his wife owned this property jointly until June 7, 1993, when he quitclaimed his interest to her, a transfer which the plaintiff claims was fraudulent.
A hearing was held concerning the plaintiff's application for an attachment, and the evidence disclosed that the promissory note in question was executed on April 19, 1989, and was payable to the Westheimer Memorial Bank in Houston in the original principal amount of $150,000 The note had a handwritten due date of April 19, 1991, and was not paid when due. Kodsy paid interest until August 12, 1990. The Federal Deposit Insurance Company (FDIC) was appointed as receiver when Westheimer Memorial became insolvent. In September, 1994, the FDIC assigned the note to the plaintiff for value, and the plaintiff is now the holder thereof. Kodsy failed to pay the note when due and approximately $149,500 of principal is due, plus interest from August, 1990 to the due date in April, 1991, which was calculated at prime plus one percent, and thereafter at eighteen percent, along with attorney's fees and costs of collection, all as set forth in the note. Interest has accrued to approximately $110,000 as of December, 1994. Hence, the plaintiff seeks an attachment in the amount of $280,000.
Kodsy conceded that he received no monetary consideration for the quitclaim deed to Mrs. Kodsy. He contends, however, that by virtue of transferring his interest in the property to his wife, he "got her off his back." According to him, they were having some marital difficulties, and by transferring his interest in Lake Avenue, Greenwich, he quieted her anxieties regarding a possible future divorce. The plaintiff contends that the real reason for the transfer was Kodsy's desire to insulate the property from the debt CT Page 4397 due the plaintiff. The evidence further indicates that after the transfer of his interest to his wife, Kodsy continued to reside at the subject premises and to pay all real estate taxes and other household expenses.
An analysis of the plaintiff's request for a prejudgment remedy begins with General Statutes § 52-278d(a)(1), which permits a court to grant a prejudgment remedy if the plaintiff has shown probable cause that a "judgment in the amount of the prejudgment remedy sought . . . taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff." "Prejudgment remedy proceedings do not address the merits of the action; they concern only whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action. . . . In acting on a prejudgment remedy motion, the trial court must evaluate the arguments and evidence produced by both parties to determine whether there is probable cause to sustain the validity of the plaintiff's claim. . . . [T]he trial court, vested with broad discretion, need determine only the likely success of the plaintiff's claim by weighing probabilities. . . . Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action. . . . The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." (Citations omitted; internal quotation marks omitted.) Tyler v. Schnabel,34 Conn. App. 216, 219-220, 641 A.2d 388 (1994).
It is clear that Kodsy did not pay the note when due and therefore he owes the plaintiff, as holder of the note, the principal balance, and interest thereon, attorney's fees and costs in the approximate amount of $260,000. The plaintiff thus has demonstrated that probable cause exists that, as holder of the note in issue, it will recover a judgment against Kodsy in that approximate amount.
As to the allegations of a fraudulent transfer from Kodsy to his wife as contained in the second count of the plaintiff's complaint, the alleged fraudulent transaction in this case occurred in June of 1993. Therefore, Conn. Pub. Acts No. 91-297 (1991), the Uniform Fraudulent Transfer Act (UFTA), effective October 1, 1991, which repealed General Statutes § 52-552, is applicable to this case. This act, General Statutes § 52-552a et seq., provides in CT Page 4398 pertinent part that " [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." General Statutes § 52-552e(a).
This act also provides, General Statutes § 52-552f, that "(a) [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation; (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." An "insider" includes a relative of the debtor. General Statutes § 52-552b(7)(A)(i).
In seeking an attachment of Mrs. Kodsy's interest in the subject premises, the plaintiff submitted an affidavit of its manager which referred to General Statutes § 52-552f, which concerns a transfer without adequate consideration at a time when the transferor or debtor was or became insolvent. It is clear that Kodsy released his one-half interest in the subject premises to his wife without any monetary consideration, and in fact, the defendant conceded this was true. His claim that the transfer was motivated by an attempt to resolve a property settlement in the event of a future divorce was not credible. Thus, the plaintiff has clearly shown that there was a transfer by Kodsy of his interest in real estate at a time when he was in debt to the FDIC on a note, now held by the plaintiff as assignee.
The remaining question under General Statutes § 52-552f
was whether, at the time of the transfer, the defendant Kodsy was CT Page 4399 "insolvent," or became so as a result of the transfer. Pursuant to § 52-552c(a) "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair value." Furthermore, § 52-552c(b) provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." According to Herald Publishing Co. v.Barberino, Superior Court, judicial district of Hartford/New Britain at New Britain, docket no. 454680 (Oct. 27, 1993, Dorsey, J.), "[w]hen Connecticut adopted the Uniform Fraudulent Transfer Act . . . it was obviously intended to aid creditors in non-bankruptcy situations to obtain redress from debtors who have transferred or concealed assets." This same case also holds that in analyzing UFTA, "cases interpreting . . . the Bankruptcy Code are helpful in interpreting 52-552a." Id.Herald Publishing notes that there are a number of factors in determining whether a debtor is generally paying his debts when they become due. These factors include "the number and amount of unpaid debts in relation to the size of the debtor's operation, the age and number of unpaid debts, the total amount of debt and the number of unpaid creditors. . . . Other factors to consider are the amounts of the delinquency, and the liquidity as opposed to the amount of the delinquency and the nature and conduct of the debtor's affairs." Id.
In the present case, Kodsy conceded that he was not paying on the note to the FDIC at me time of the transfer of the subject premises in 1993, and further that he had not made any payments thereon since October, 1990. This debt was over $200,000 at me time of me transfer. Furthermore, Kodsy introduced several bills that he claimed he had paid, which totalled about $20,000, or roughly 10% of his debt on the note in issue. Thus, it appears that he was only paying about 10% of his debts when they became due. The evidence submitted by Kodsy was not sufficient to demonstrate that he was paying his debts as they became due, and therefore, he is presumed to have been insolvent at the time of the transfer. General Statutes § 52-552c(b).
Although not referred to in its complaint or affidavit, the plaintiff claims to have submitted evidence at the hearing in support of an attachment based on General Statute § 52-552e. This section of UFTA refers to transfer made "with actual intent to hinder, delay or defraud" one's creditors. Among the factors to be considered are the so-called "badges of fraud" set forth in General Statutes § 52-552e(b), including identity of the transferee, which in this case was the debtor's wife, an "insider" CT Page 4400 as defined in § 52-552b(7)(A)(i). Another factor to be considered is that the transferor remained in possession and control of the transferred premises, as Kodsy testified that he continued to reside in the subject premises with his wife, and to pay all the various household expenses. Combining these two "badges" with the fact that the debtor did not receive any consideration for the transfer, leads the court to conclude that at the hearing itself the plaintiff demonstrated probable cause that the debtor violated this section of UFTA as well.
After evaluating the evidence and the credibility of the witnesses, the court is of the opinion that the plaintiff has demonstrated probable cause that he will recover a judgment in the amount of the prejudgment remedy sought by proving, by clear and convincing evidence, that the transfer by Kodsy of his interest in the subject premises to his wife was a fraudulent transfer within the scope of General Statutes § 52-552f, and/or § 52-552e. Hence the plaintiff is entitled to and is hereby granted an attachment of the interests of both Tewfik Kodsy and his wife in 958 Lake Avenue, Greenwich, in the amount of $280,000.
So Ordered.
Dated at Stamford, Connecticut, this 12th day of April, 1995.
William B. Lewis, Judge